**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| SHARON SIMONTON,<br><br>　　　　　　Plaintiff,<br>vs.<br><br>JO ANNE B. BARNHART, Commissioner<br>　of the Social Security Administration,<br><br>　　　　　　Defendant. | )<br>)<br>)<br>)　　1:05-cv-888-SEB-VSS<br>)<br>)<br>)<br>)<br>) |

**Entry Discussing Complaint for Judicial Review**

Sharon Simonton ("Simonton") seeks judicial review of the denial by the Commissioner of the Social Security Administration ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C. § 301, *et seq*.

For the reasons explained in this Entry, the Commissioner's decision must be **affirmed.**

## I.  BACKGROUND

Simonton filed applications for SSI and DIB on December 10, 2001, alleging an onset date of disability of December 1, 1999. Her applications were denied initially and upon reconsideration. Her request for a hearing before an Administrative Law Judge ("ALJ") was granted, and such hearing was conducted on November 12, 2003. Simonton was present, accompanied by her attorney.  Medical and other records were introduced into evidence, and Simonton and a vocational expert ("VE") testified at the hearing. The ALJ issued a decision on August 11, 2004, denying benefits.  On April 18, 2005, the Appeals Council denied Simonton's request for review, making the ALJ's decision final, *see Luna v. Shalala,* 22 F.3d 687, 689 (7th Cir. 1994), and this action for judicial review of the ALJ's decision followed. The court has jurisdiction over this action pursuant to 42 U.S.C. § 405(g), which provides that "[a]ny individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . in [a] district court of the United States."

The ALJ's decision included the following findings: (1) Simonton met the requirements of the Act for disability insured status on December 1, 1999, the date she stated she became unable to work, and continued to meet such requirements through the date of the ALJ's decision; (2) Simonton had not engaged in substantial gainful activity since December 1, 1999, with the possible exception of a job she held from August to October 2003; (3) Simonton had the following medically determinable impairments: Crohn's disease, history of torn right rotator cuff, degenerative disease of the cervical and lumbar spine, peripheral neuropathy, history of left ankle surgery, hypertension, and possible fibromyalgia; (4) Simonton had an impairment or combination of impairments that was "severe" within the meaning of the Act and Regulations; (5) Simonton did not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment in the Listing of Impairments, Appendix 1, Subpart P of Regulation No. 4; (6) Simonton's statements regarding her subjective symptoms and functional limitations were not fully credible for the reasons stated in the body of the ALJ's decision; (7) Simonton had the residual functional capacity ("RFC") to perform the requirements of light and sedentary work as defined in the regulations except for performing work requiring any climbing or a strong, sustained grip, reaching above shoulder level, work at unprotected heights, or repetitive bending or stooping (non-exertional); (8) Simonton's past relevant work as a cashier and an assistant manager, as generally performed in the national economy, did not require work-related activities precluded by the limitations found above; (9) Simonton was capable of performing past relevant work; (10) Simonton's RFC for the full range of light work was reduced by the non-exertional limitations listed above; (11) on December 1, 1999, Simonton was 42 years old, which is defined as a younger individual, she had a limited education, and lacked skills that were transferable to work that is within her RFC; (12) based on an exertional capacity for light work, and Simonton's age, education and work experience, 20 C.F.R. §§ 404.1569 and 416.969 and Rule 202.18, Table No. 2 of Appendix 2, Subpart P of Regulation No. 4 would direct a conclusion of "not disabled;" and (13) although Simonton cannot perform the full range of light work, using the above-cited rule as a framework for decision-making, there were jobs in significant numbers in the national economy which she could perform. With these findings in hand, and through the application of applicable rules and regulations, the ALJ concluded that Simonton had not been under a "disability" as defined in the Act at any time from December 1, 1999, through the date of the ALJ's decision.

## II.  DISCUSSION

### A.  Applicable Law

To be eligible for DIB and SSI, a claimant must prove she is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A).  To establish disability, the plaintiff is required to present medical evidence of an impairment that results "from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and

laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [a claimant's] statement of symptoms." 20 C.F.R. §§ 416.908; 404.1508.

A five-step inquiry outlined in Social Security regulations is used to determine disability status. *Butera v. Apfel,* 173 F.3d 1049, 1054 (7th Cir. 1999).

> In order to determine whether an individual is entitled to disability insurance benefits, the ALJ must engage in a sequential five-step process which establishes whether or not the claimant is disabled. The claimant must show that: (1) he is not presently employed; (2) his impairment is severe; (3) his impairment is listed or equal to a listing in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) he is not able to perform his past relevant work; and (5) he is unable to perform any other work within the national and local economy. *Stevenson v. Chater*, 105 F.3d 1151, 1154 (7th Cir.1997); 20 C.F.R. § 416.920.

*Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

The task a court faces in a case such as this is not to attempt a *de novo* determination of the plaintiff's entitlement to benefits, but to decide if the Commissioner's decision was supported by substantial evidence and otherwise is free of legal error. *Kendrick v. Shalala,* 998 F.2d 455, 458 (7th Cir. 1993). "Substantial evidence" has been defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison v. NLRB,* 305 U.S. 197, 229 (1938)).

### B. Analysis

The ALJ found that although Simonton had "severe" impairments consisting of Crohn's disease, history of torn right rotator cuff, degenerative disease of the cervical and lumbar spine, peripheral neuropathy, history of left ankle surgery, hypertension, and possible fibromyalgia, she could perform her past relevant work.

Simonton first argues that the limitations determined by the ALJ resulting from her Crohn's disease were too mild and were not supported by substantial evidence. Simonton recites various complaints, findings and diagnoses from clinic and physicians' notes, but does not point to any physician report which indicates that Simonton was unable to work. The ALJ did discuss Simonton's Crohn's disease and symptoms and the history of her treatment. (R. at 16). The VE testified that for the types of jobs that Simonton could perform employers would allow restroom breaks once an hour if needed. (R. at 537-39). The ALJ's evaluation of Simonton's Crohn's disease was supported by substantial evidence. The court must decline any invitation to resolve conflicts in or reweigh the evidence. *Diaz v. Chater,* 55 F.3d 300, 305 (7th Cir. 1995) ("We cannot substitute our own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled.").

Simonton also argues that the ALJ's credibility determination is not supported by substantial evidence. The ALJ determined that Simonton's statements regarding her subjective symptoms and functional limitations were not fully credible. (R. at 17, 18, 20). The ALJ recited the appropriate rules and regulations to consider when evaluating a claimant's credibility. (R. at 18, citing 20 C.F.R. § 404.1529; 20 C.F.R. § 416.929; SSR 96-7p). The applicable criteria include: daily activities; the location, duration, frequency, and intensity of pain; precipitating and aggravating factors; type, dosage, effectiveness, and side-effects of medication; treatment, other than medication, for relief of pain; and the objective medical evidence and other evidence. (R. at 17). In discussing Simonton's credibility the ALJ noted that the medical evidence demonstrated mild to moderate problems which had responded favorably to medication, that there were no significant side effects from the medications, that Simonton stopped working at the time of her alleged onset of disability (1999) because she moved and did not have transportation to get to work (R. at 519), and that she was able to work for three months in 2003 as a kitchen helper at work more exertionally demanding than the RFC determined by the ALJ. (R. at 18).[1] The ALJ noted that no treating or examining physician had indicated that Simonton had more severe limitations than those determined by the ALJ. *Id.* The ALJ discounted Simonton's credibility "to some extent" for the above reasons, but did acknowledge that the evidence supported significant functional limitations. *Id.* The ALJ limited Simonton to light work because of her carpal tunnel syndrome and shoulder injury and her other musculoskeletal/neurological complaints. *Id.* The court grants special deference to the credibility determination made by the ALJ and generally will not overturn an ALJ's credibility finding unless it is "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir.2001). In this case, the ALJ provided reasons supported by record evidence for finding not fully credible Simonton's allegations that she could not perform a limited range of light work. The ALJ's discussion relating to Simonton's credibility is adequate to allow the court to trace her reasoning. The court does not find that the ALJ's analysis is patently wrong, and therefore, must affirm the ALJ's credibility determination.

Simonton further argues that the ALJ failed to consider her obesity as a severe impairment and failed to evaluate its effect on her RFC. Simonton does not elaborate, however, as to how her weight prevented her from performing the restricted level of jobs determined by the ALJ. The ALJ did acknowledge that Simonton was overweight at 62 3/4 inches and 183 pounds. (R. at 17). The state agency physicians, upon whose report the ALJ relied, noted Simonton's height and weight. (R. at 18, 271). There is no reversible error under these circumstances. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (failure to mention obesity is not reason enough to remand case, and even where

---

[1] Simonton does accurately point out that the ALJ's determination that the three month kitchen helper job was more exertionally demanding than light work is not supported by substantial evidence. The ALJ did not ask the VE any questions about the kitchen worker job in the nursing home, nor does any other evidence of record address this issue. The court finds this to be harmless error, however. The duration of the work was only three months and it was only one of several considerations discussed by the ALJ in discounting Simonton's credibility.

4

ALJ did not explicitly consider obesity, it was factored indirectly into the ALJ's decision where the reviewing doctors were aware of the claimant's obesity).

In sum, in determining Simonton's eligibility for benefits, the ALJ applied the proper analytical methodology and fairly considered and weighed the evidence. The ALJ's decision was based on consideration of: (1) Simonton's age, education, and work history; (2) Simonton's history of diagnoses, treatment, medications, and evaluations; (3) Simonton's own account of her conditions, capabilities, limitations, symptoms and daily routine; and (4) the testimony of Simonton and a VE. There was no significant evidence, symptom, complaint, or issue which the ALJ's decision overlooked. Substantial evidence supports the ALJ's findings of fact and identification and assessment of Simonton's impairments, and there was no error of law in the manner in which the evidence was evaluated. The ALJ sufficiently articulated her assessment of the evidence to enable the court to "trace the path of [his] reasoning," *Hickman v. Apfel,* 187 F.3d 683, 689 (7th Cir. 1999) (quoting *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996)), and there was substantial evidence to support the ALJ's determination that Simonton was not disabled as defined in the Act at any time through the date of the ALJ's decision.

### III. CONCLUSION

There was no reversible error in the assessment of Simonton's applications for DIB and SSI. The final decision of the Commissioner is supported by substantial evidence and is not tainted by legal error. In these circumstances, Simonton is not entitled to relief in this action. Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED**.

Date: 05/19/2006

*[signature: Sarah Evans Barker]*

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana